CHEMICAL LEAMAN TANK LINES,
INC., and Matlack, Inc.

v.

UNITED STATES of America and Interstate Commerce Commission
and
Baker Petroleum Transportation Co., Inc.
Atlantic Richfield Company.

Civ. A. No. 41890.

United States District Court
E. D. Pennsylvania.

May 9, 1968.

Leonard A. Jaskiewicz, Ronald N. Cobert, Grove, Jaskiewicz & Gilliam, Washington, D. C., and Edwin H. van Deusen, Downingtown, Pa., for plaintiffs.

Donald F. Turner, John H. D. Wigger, Washington, D. C., Drew J. T. O'Keefe, Philadelphia, Pa., for the U.S.A.

Robert W. Ginnane and Nahum Litt, Washington, D. C., for Interstate Commerce Commission.

Samuel W. Earnshaw, Washington, D. C., Peter Platten, and Bertram Balch, Jr., Philadelphia, Pa., for Baker Petroleum.

Before FREEDMAN, Circuit Judge, and LORD and BODY, District Judges.

## OPINION OF THE COURT

BODY, District Judge.

In this action before a three-judge court convened under Title 28 U.S.C. § 2284, the plaintiffs seek to enjoin, annul, and set aside the reports and orders of the defendant, Interstate Commerce Commission, in Baker Petroleum Transportation Co., Inc., Contract Carrier Application (reported at 94 M.C.C. 312, 99 M.C.C. 345, and 102 M.C.C. 29). By its last order, the Interstate Commerce Commission granted the application of Baker Petroleum Transportation Co., Inc. (hereinafter "Baker") to operate as a so-called contract carrier by motor vehicle transporting certain petroleum products under continuing contracts with three shippers between certain points in Pennsylvania, Delaware, Maryland, and Virginia.

The plaintiffs' right to injunctive relief rests on four propositions: (1) that there is no rational basis for the ICC's finding under 49 U.S.C. § 303(a) (15) that Baker proposes to operate as a

contract carrier by vehicle; (2) that the ICC has erroneously, arbitrarily, and equivocally applied the criteria of 49 U.S.C. § 309(b); (3) that the ICC has failed to consider and apply properly the National Transportation Policy as set forth by the Congress of the United States; and (4) that the ICC has erroneously considered evidence not of record on material issues to the prejudice of the plaintiffs.

The relevant procedural history is as follows:

On August 18, 1962, Baker filed its application with the ICC for contract carrier permits under 49 U.S.C. § 309. The plaintiffs in this action, who are common carriers, adduced evidence in opposition to Baker's application. After a hearing, the ICC examiner recommended that the application be granted. However, on December 31, 1963, having concluded that Baker's proposed operations were those of a common rather than a contract carrier, the ICC reversed the hearing examiner and denied Baker's application. The agency then twice denied Baker's petitions for reconsideration. On April 13, 1966, after Baker had amended its application, and after reconsideration on the same record, the ICC issued a report and order reversing its own prior decision and granting Baker's application for contract carrier permits. The plaintiffs' subsequent petitions for reconsideration and for a finding that an issue of general transportation importance was involved were denied.

Administrative remedies have been exhausted. Under attack before this Court is the April 13, 1966 order by the ICC granting Baker's contract carrier application.

Baker's original application was denied by the ICC because the Commission found that Baker did not meet the statutorily required definition of "contract carriage", as set forth in 49 U.S.C. § 303(a) (15). See 94 M.C.C. 315. In its successful petition for reconsideration, Baker contended that restrictive amendments in its application brought the company within the definitional criteria. The plaintiffs, as protesting carriers, replied to and denied Baker's contentions. However, the ICC, Division I, concluded that the restrictively amended application brought the proposed service within the definition of a contract carrier by motor vehicle because (1) Baker proposed to serve, and would hold itself out to serve, only a limited number of shippers; and (2) evaluation of Baker's equipment obligations under its proposal to serve only three shippers under contract supported a finding that it would provide specific equipment for each shipper's exclusive use insofar as *interstate* transportation was concerned; and (3) the Commission had erred in its earier finding that the service was not designed to meet the distinct needs of each of Baker's shippers. Further, the ICC concluded that the grant of the proposed contract carrier service was consistent with the public interest and the national transportation policy. See 102 M.C.C. 31–36.

■ The crucial issue before the Court is whether the ICC's findings and conclusions are rationally supported by substantial evidence of record and by the applicable law. In determining that issue, our scope of review is, of course, quite limited. See Illinois Central R. Co. v. Norfolk & W. Ry. Co., 385 U.S. 57, 69, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966); Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

■ The relevant substantive evidence relied upon by the Commission to support its findings is as follows:[1]

Since 1937, Baker had been operating both as a common and a contract carrier on an intrastate basis in Delaware, transporting bulk petroleum products from the Texaco Company at Claymont, Delaware. In December 1960, Baker

1. See Baker Petroleum Transportation Co., Inc., Contract Carrier Application, 102 M.C.C. 29, 31–35, decided April 13, 1966.

was notified that Texaco would no longer manufacture asphalt. Baker located a new source of asphalt at the Atlantic Refining Company in Philadelphia; the resulting interstate transportation to Delaware necessitated emergency and temporary authorizations from the ICC. The purpose of Baker's contested application to the ICC was to obtain permanent interstate contract carrier authority for its asphalt transportation from Atlantic Refining Company and, additionally, for fuel oil transportation to Aldon Rug Mills in Pennsylvania from a Delaware oil company ten miles away.

The ICC, in concluding that Baker qualified as a contract carrier in its transportation for Atlantic Refining Company, found that four of Baker's asphalt trailers would be dedicated to Atlantic's exclusive use; the fifth was to be used exclusively to move the asphalt manufactured by the Del Val Company.[2] The Commission's findings were substantiated by the facts that Baker had agreed to limit its interstate transportation of asphalt products to shipments by Atlantic and Del Val; that Baker had but five asphalt trucks; and that one truck was uncontrovertibly dedicated to Del Val. Thus the other four trucks, as far as interstate asphalt transportation was concerned, a fortiori were dedicated exclusively to Atlantic. Accordingly, the Commission concluded that Baker, in its relationship to Atlantic Refining, did qualify as a "contract carrier by motor vehicle" within the meaning of U.S.C. § 303(a) (15). We find the ICC's conclusion adequately, rationally supported by the supportive evidence.

Additionally, the ICC also found that the arrangement between Baker and Atlantic was "for furnishing of transportation services designed to meet the distinct needs of each individual customer", and thus Baker should qualify as a contract carrier under 49 U.S.C.

§ 303(a) (15). The plaintiffs contend that the ICC's conclusion is not supported by the record. We disagree.

The Commission pointed out that:

"Shipper's [Atlantic's] needs are unusual because applicant [Baker] has heretofore rendered such individualized and specialized service to these consignees that it has actually brought them to the shipper, to avail themselves of shipper's product with applicant's continued service. The evidence supports a finding that these consignees deal with shipper because shipper has agreed to give them applicant's personalized service which is tailored to meet their service requirements."

102 M.C.C. 29, 35. The evidence supporting the finding was that Baker always furnished equipment and made deliveries on time; that Baker continually checked the consignees' inventories to assure no interruption in consignees' operations; that the consignees had tried and retained Baker's service because of delayed deliveries by common carriers; and that Baker solved Atlantic's basic transportation problem by providing fast delivery to small-scale receivers of asphalt (generally on-the-job contractors who have limited storage capacity on road jobs) whose needs are unpredictably and immediately affected by fluctuating weather conditions. 102 M.C.C. 29, 32–33. Clearly there is adequate evidence to support the Commission's conclusion that Baker furnishes transportation services meeting the distinct needs of Atlantic and of Atlantic's consignees.

With respect to Baker's fuel oil transportation contract with Aldon Rug Mills, the ICC also found that Baker would be dedicating its fuel oil transportation equipment solely to Aldon, as far as interstate transportation was concerned. In light of the fact that Baker's application requested ICC approval of inter-

---

2. Also at issue before the ICC was Baker's authority to transport petroleum asphalt from Del Val Asphalt Corporation in Delaware to a plant in Pennsylvania.

The plaintiffs do not contest that part of the ICC's order authorizing the Del Val Delaware-Pennsylvania interstate carriage.

state fuel oil transportation only for its shipments for Aldon, that conclusion seems rationally supportable by the record.

The Commission also found that the arrangement between Baker and Aldon would meet Aldon's "distinct needs". The evidence of such distinct needs is clearly detailed at 102 M.C.C. 34 and is sufficient to support the Commission's finding.

The plaintiffs' further contend that even if the defendant ICC properly found contract carriage to exist, the agency nevertheless incorrectly applied Title 49 U.S.C. § 309(b). It is clear that the agency considered the criteria specified in that section of the statute; and furthermore, we are of the opinion that the agency applied the criteria correctly and fairly. See 102 M.C.C. 29, 36–37. We note particularly the agency's observations, well-substantiated by the evidence before it and not effectively denied by the plaintiffs, that:

> "Applicant has been an intrastate carrier of petroleum products for many years and if it is denied authority to obtain these commodities from the now available interstate sources, it will be forced to discontinue its transportation services. Protestants have not been handling the traffic involved * * * and a grant here would have little effect upon their operations. * * * "

102 M.C.C. 29, 36.

The plaintiffs raise other challenges to the Commission's findings; none contain sufficient merit or demonstrate sufficient prejudice to plaintiffs to require that this Court set aside the ICC's order. Under all the circumstances involved, we conclude that there was sufficient evidence to support the agency's conclusions; that the agency correctly interpreted and applied the relevant statutory provisions; and that the order approving Baker's application for contract carrier status was properly entered. This case has been carefully considered by the agency several times over a four-year period; the agency has adequately explained its final decision; and the plaintiffs have not demonstrated sufficient reason for this Court to set the agency's decision aside.

## ORDER

And now, this ninth day of May 1968, the prayer of plaintiffs Chemical Leaman Tank Lines, Inc. and Matlack, Inc., that this Court issue an order permanently enjoining, setting aside, annulling and suspending the report and order of the Interstate Commerce Commission in Baker Petroleum Transportation Co., Inc., 102 M.C.C. 29, decided on April 13, 1966, will be and hereby is denied.

And further, the request of plaintiffs that this Court remand the above matter to the Interstate Commerce Commission for further proceedings will be and hereby is DENIED.